McKinney, J.,
delivered the opinion of the Court,
It appears from the pleadings and proof in this cause, that in the year 1854, one Newcomb Thompson purchased from Grant a tract of land, in Bedford county, of about 480 acres, and took a deed of conveyance for the same, which, on its face, reserves an express lien for the security of the purchase money; for which the purchaser executed his notes. One of said notes, for $1500, still remains unpaid; and has, it seems, been transferred to the defendant, James A. Grant.
It further appears, that on the 14th of October, 1854, New-comb Thompson sold and conveyed a portion of said tract, containing 320 acres, to the complainant, Thompson; and the latter, on the 24th of November, 1855, sold and conveyed 49 acres of his purchase, to the other complainant, Dameron.
It likewise appears, that on the 5th of April, 1856, said Newcomb Thompson sold and conveyed the residue of the tract purchased from Gant, to the defendant, Pyland, who af-terwards sold about 40 acres thereof to the defendant, O’Neal.
The complainants brought this bill for the purpose of having the vendor’s lien extinguished, and to this end, the holder of the note for the unpaid purchase money, is joined as a party defendant. The bill assumes, that the portion of the tract last sold by Thompson to Pyland, is, primarily, chargeable with the debt of $1500, the unpaid purchase money; and it is alleged, that the defendants, in anticipation of this charge falling upon their part of the land, are wasting and selling off the timber, which constitutes, in a considerable degree, the value of the property.
The first question to be considered, is, does a lien exist in this case ? Prom the statement in the record, we must assume, that the note for the purchase money remaining due, was transferred by the vendor to James A. Gant, the defendant.
We have held, that, where the legal title has been conveyed to the purchaser, the assignment or transfer by the vendor, to a third person, of a note taken for the purchase money, does not carry with it, to the latter, the implied lien of the vendor. *539 Green v. Demoss, 10 Hum., 371. But, on the other hand, where the vendor has not parted with the legal title; or where he has taken a mortgage, or has retained an express lien, by agreement, it is equally well settled, that the lien accompanies an assignment of the purchaser’s note for the purchase money.
The only inquiry, then, upon this point of the case, is, whether the effect of the provision in the conveyance from the original vendor to Newcomb Thompson, was to create an express lien, by contract or agreement of the parties ? and we think it was.
Secondly. It is argued for the defendants, that, inasmuch as the complainants have neither paid, nor been called on to* pay, the debt due to the vendor or his assignee, they cannot, for that reason, maintain .this bill.
We do not assent to this conclusion. We are of opinion that, although no actual injury has as yet been sustained by the complainants; but, from the peculiar relation between the parties, an injury may be apprehended in future. They may seek the aid of a Court of Equity, by a bill quia iimet, to prevent the anticipated injury. According to the course of decision of our Courts, the complainants have a right to insist, that the lands of the defendants shall be first subjected to the discharge of this incumbrance-, in exoneration of their own lands. And if the vendor, or his assignee, will not voluntarily proceed to have the lien discharged, shall the complainants be compelled to stand by, until the lands primarily chargeable with the burden of the lien, may become so depreciated in value, by the commission of voluntary waste, or otherwise, as that the charge may, possibly, to some extent, at least, be thrown upon them ? We think not- In the absence of any adjudication directly in point, it seems to us that, in analogy to the case of a surety, the present bill may well be sustained. A creditor is not bound, in general, to active diligence in collecting his debt, yet it has been held, that, after the debt has become due, the surety may file a bill quia timet, to compel the creditor to sue for and collect the debt from the *540 principal. 1 Story’s Eq., secs. 327, 730, 826. Numerous •other analogies might be drawn from the principles applicable to bills quia timet, if necessary. Bills of this character are maintained to prevent anticipated injuries, and not merely to redress them when done. The party seeks the aid of a Court of Equity, because he fears some future probable injury to his rights or interests; and not because an injury has already occurred, which requires any compensation or other relief. 1 Story’s Eq., sec. 826.
These principles, we thinly amply sustain the bill.
Decree affirmed.